There is a reasonable probability that the outcome in the state proceeding below would have been different but for what the district court found to be counsel's deficient performance in interviewing and subpoenaing the two crucial eyewitnesses. Would you spell out exactly why you think that's the case because neither Gray nor Allen said that she would testify and there's nothing to indicate to what they would testify had they been subpoenaed. We have a guess at what Gray might have said so assuming even that she would have said what she might have said based upon the hearsay recounting from Powell, how would the outcome have been, how do we, how do you know that the outcome would have been effective? Your Honor, the test is reasonable probability and whether or not this Court's confidence in the outcome was sufficiently undermined. How can we do anything without an affidavit or deposition evidence from Gray and Allen? That is a wonderful question, Your Honor, and I think it really leads more into the second issue here which is the discovery issue. What we can see in this case is that there's utter confusion perhaps. You had plenty of time for discovery. I mean, you could have done that in the state system. Well, Your Honor, the test for discovery, however, is whether the claim, the ineffectiveness claim was fully developed and it was. It was completely exhausted. It was presented. There was an evidentiary hearing. Mr. Goldsby was deposed in connection with that matter. But the critical discovery here had nothing to do with depositions and interrogatories. Why didn't somebody take their deposition? It has to do with waiting by their house until they show up and then getting a statement in most cases. I'm quoting from this Court's recent decision in FAM. To obtain Rule 6a discovery, petitioner need not demonstrate that he will ultimately prevail on his underlying claim. It needs to test is whether or not he, this evidence is essential to the full development. Now, perhaps it would have been better had somebody. I'm thinking the most likely thing is that if you ever did find them and subpoena them and if they ever actually showed up in response to the subpoena, two big ifs, that what they'd say is I didn't see anything, I don't know anything. The problem, Your Honor, is that's exactly where we are. These are ifs. These are speculations. Yeah, as long as they're just speculations, you lose. It's your burden to show that it would have mattered. It was the burden to develop the claim, to present the claim, and he presented the claim. And he presented the best evidence at that time that he had. Now, perhaps it would have been better to subpoena and have these people in one form or another testify. But what they did present, and it was before the court, below the state court, PCR court, was the police reports that we present here as well that indicates likely what the testimony would have been. And the likely testimony would be that Ms. Gray would have placed Mr. Goldsby in the front passenger seat. Unlike two other neutral and disinterested witnesses who would have placed him in the rear seat behind the driver. So the test is not that you have to entirely or even successfully, and I would cite from the Supreme Court's case in Williams, the test is was the factual basis for the claim developed in the state's courts. And the test isn't was it successfully developed. Well, but you have a duty of due diligence. I mean, it's Holland. It just seems very clear. Precisely, Your Honor. The issue is diligence. And is it diligent to present a claim, have a deposition, have a hearing, present the best evidence that you have at that time. Perhaps not present all the evidence. Well, I mean, you know, it seems sort of self-evident that this was the heart of the claim. I mean. I have to agree. Well, then due diligence would have suggested that you give it a first shot in a state court. That's why I sought leave in this case, Your Honor, below in the district court. I understand why you did. Don't you have investigators to go out and find witnesses? Of course, Your Honor. And as Judge Kleinfeld indicates, perhaps, in this case as well, we had our investigator go out and contact these witnesses. They did not talk to us. They would not talk to the police. So the only way to find out what these individuals will say, would say, is a court order. We requested discovery in the form of an order for deposition for subpoenas, and that was denied. And, again, the only test here is a diligent effort, not a successful effort. That's the Supreme Court's words in Williams and in Holland. And this court has followed that line of reasoning in the Pham case. The Pham case just recently ruled that the district court did abuse its discretion in denying a Rule 6a motion for discovery, where, again, counsel in that case had the police report of gunshot residue, but they did not have the underlying lab notes. Don't you have to show, suppose that your investigator actually had succeeded, or suppose the judge had issued an order even to get to first base, and suppose that these women then gave a useful statement, I'm supposing a lot in your favor, wouldn't you even then, to get to first base, have had to show that you diligently pursued the same evidence in state court or that the defendant did, and that it's through no fault of his own that it wasn't presented there? No, Your Honor. The court just used the words, the same evidence. I would have to show a diligent effort, true, but I don't have to show that the diligent effort equals the same evidence. It's whether I diligently pursued the claim below. And, again, this ---- But you couldn't have possibly diligently pursued the claim by not diligently pursuing the only evidence that stands a prayer of having it succeed. Your Honor, I would suggest that there is a difference, a big difference between a diligent effort and a complete, fruitful, successful effort. One is an attempt, some effort to attempt to get to the final result. One is actually getting to the final result. Okay. Let's, if we may, go back to the question I asked you, which is assuming Gray would testify to what Gray said she would testify, what Powell said she told us, just assume that,  because you still have two eyewitness IDs of Goldsby as the shooter. Your Honor, I did intend to save some time for rebuttal, but if I may address that question. I'll try not to do it too quickly. However, I think we need to remember the totality of this case. No physical evidence against Mr. Goldsby. No weapon. We have no gunshot residue test of his clothes, no swab of his fingers. Mr. Goldsby was seen by a police officer about the same time of the shooting. The officer said ten minutes before his name was announced over the loudspeaker. Police arrived at the scene of the shooting five minutes after, and then five minutes after that is when Mr. Powell returned to the scene. So Mr. Goldsby was seen approximately the same time of the shooting on a bicycle, riding away from an officer on a bicycle in a different location. We had three gang members who were stalked. One of them was wearing a stalking mask. I think that's important because, as Ms. Gray told Mr. Powell in that police report, again, it's indicated, that the driver of the car was wearing some piece of clothing covering up his face. Now, there was a transam that was related to those three gentlemen. The police located it, never searched it. So what you have here now is a crip rival gang member who, at the time of the shooting, cannot say it's Mr. Goldsby, does not say. He says somebody shot my homeboy. He goes to get his fellow members, comes back. Only at that point does he say it's Mark Goldsby, it's the rival gang member that did it. So this case was very thin, and I think if we had someone coming in saying, yes, I saw this gentleman, I'm neutral, he was in the front seat, and you've got these other two neutral, disinterested witnesses placing my client in the back passenger seat, that surely raises considerable doubt as to his guilt. So I would think that this Court's confidence in this outcome should be sufficiently undermined. Okay. Ms. Alexander. May I please the Court? Carolyn Alexander for Respondent Stan Cerniak. I'd like to address first the discovery issue, if I may, just for a minute. I've submitted a supplemental authority letter to the Court under Rule 28J mentioning Cooper Smith v. Palmateer. That case conclusively determines this issue. And if I might read from Cooper Smith, Petitioner knew of the existence of the information contained in the declaration and affidavit at the time of the State Court proceedings, but he did not present it during those proceedings. As a result, Petitioner failed to develop the factual basis for his claim diligently. Cooper Smith, we raised exactly the same argument. We dealt with exactly the same argument and rejected the exact same argument. Cooper Smith does not stand for the fact that if you fairly present your claim and exhaust your claim, you then satisfy the requirement of due diligence. Quite the contrary. It's, as Judge Kleinfeld said, it's the evidence that has to be developed. It's the factual basis of the claim that has to be developed. And as the district court found, Mr. Goldsby had plenty of time during his State Court proceedings to subpoena the witnesses, to get depositions, to do whatever he needed to do to develop that evidence, and he made no effort whatsoever. True, he submitted the police reports, but in his deposition, when the State said, Who are these witnesses? What would they have said at trial? Mr. Goldsby responded, I don't know. I don't know what they would have said. I don't know who those people are. There was just simply no attempt made. So he can't expand the record under Rule 7 because he didn't satisfy the due diligence requirements of 2254E2. Therefore, discovery is futile. He can't show good cause because if you can't expand the record, what's the point of doing discovery? That was what the magistrate judge found. Regarding the issue of prejudice, I think by the court's questions, we've narrowed the issue exactly, and that is we have no idea what either Gray or Allen would have testified to under oath at trial. It doesn't really matter what this young woman said to her friend, who was a friend of the victim, over the phone the night of the murder. That really is irrelevant. We don't know what she would have said had she been subpoenaed, had she had to testify, had that testimony been under oath. Whether petitioner has to present affidavits or sworn statements, I don't know. The cases seem to indicate that, and our position is, in fact, that they do. However, the point is that some way and somehow you have to show what the witness's testimony would have been at trial, not what her likely testimony would have been or what she said to a friend four layers of hearsay ago. The second point is whether there was a reasonable probability that petitioner would have been acquitted had Ms. Gray testified at trial. If we go from her likely testimony in the police reports as he terms it, there's simply nothing there. It's not exculpatory. She does not say and has never said petitioner or the shooter was in the front passenger seat. Mr. Goldsmith keeps inserting the word front. The word front is not in the record. It is passenger seat. Ms. Baker testified that the shooter was in the rear passenger seat. So we don't know what passenger seat means. The magistrate judge said, oh, front must mean, under its common usage, front passenger seat. I think that's erroneous. That makes no sense given what these two witnesses testified to. One testified that the shooter was in the front passenger seat. One testified that he was in the rear passenger seat. So we don't know what passenger seat means. Regardless, she goes on to say to Mr. Powell, Mr. Goldsmith or the shooter was bent over as if loading a gun. He then says to Ms. Gray, get behind the car and tell your friend to get across the street. When all of those statements are looked at in totality, that's not exculpatory. Quite the contrary, actually. And that may very well be the reason why trial counsel couldn't locate these two girls and they wouldn't give a statement to the police. I'm sure after the police talked to them, they were long gone for good reason, and there's a good reason why they won't talk to him now. I believe that is all I have. Oh, one additional point about the identifications that Judge Reimer, you mentioned. Those identifications were made. Both Mr. Powell and Mr. Baker made identifications. Ms. Baker identified Petitioner as the shooter in court, and that issue has been conclusively determined against him. That is not an issue on the Certificate of Appealability. He lost that issue in district court. Those identifications were enough to convict him. Does the Court have any questions? I don't think so. Thank you very much, Mr. Nugent. Thank you, Your Honors. With respect to the issue of the front passenger seat, that is exactly what the magistrate judge found, that that was a reference to the front passenger seat. That was based on all the circumstances. The parties had an opportunity to reject those findings and recommendations before the district court adopted them. Respondent did not object at that time. The assertion now that it's clearly erroneous to this Court is not well taken. It should not be well taken. The Coopersmith case is clearly distinguishable, as I point. This isn't a Rule 7 case. This isn't about expansion of the record. It's a Rule 6a case. Coopersmith dealt with 7a. Also, there it was a defense expert who the discovery that was trying to be introduced, somebody who could be controlled by the defense, and who the defense, therefore, had reason to know exactly what the person would have said when the first affidavit was submitted. For that reason, it's very different from here. As the Court can tell, nobody, counsel, the Court, we can't tell what these witnesses precisely would have said. The best we have is from the police report. It indicates she would have placed Mr. Goldsby in the front passenger seat. Counsel wants to take some of those statements and give them some credit, the other statements, about get behind the car and move, but she doesn't want to credit the other statements. You know, I never understood. This may seem like kind of a stupid question, but I never understood why it was so critical that there was a contradiction about who was in what seat. These things happen fast. People can be a little mixed up about who's in what seat, and you can shoot whichever seat you're in. Your Honor, the lady who was at the intersection in the driver's side as the other car passed was able to see not only the gun but the shooter, and she saw him behind the driver. She was able to identify the type of weapon, and she must have been within feet of the shooter. That neutral disinterested person put the shooter behind the driver, and the other witnesses, and these witnesses that we'd suggest should be subpoenaed here, would place Mr. Goldsby in the front passenger seat. I think somebody with that kind of proximity and ability to see is a key witness and would be believed much more than any of the other witnesses. You know, if there had been a shooting in this courtroom, I bet we'd argue among ourselves whether the person was two over from the wall or three over from the wall. Anything further? Thank you, Your Honor. Thank you, counsel. The matter just argued will be submitted.
judges: Rymer, Kleinfeld, Weiner